From C. P. Addams, Harrisburg, Pa.

---

## Massett v. Armerford Coal Mining Company et al.

*Workmen's compensation—Loss of one eye—Act of June 2, 1915.*

A workman is entitled to compensation under section 306, schedule "C," of the Act of June 2, 1915, P. L. 736, relating to all disabilities resulting from permanent injuries, where it is found on sufficient expert testimony that, by reason of an injury in the course of his employment, he has lost the industrial use of his left eye, inasmuch as it will not co-ordinate with the other eye, even with the aid of glasses.

Appeal from decision of the Workmen's Compensation Board. C. P. Indiana Co., Sept. T., 1922, No. 318.

*Charles J. Margiotti*, for claimant; *Samuel I. Spyker*, for defendant.

LANGHAM, P. J., Oct. 13, 1923.—This case comes before us on an appeal by the defendant from the decision of the Workmen's Compensation Board affirming the referee's findings of facts and conclusions of law and the order thereon made.

The history of this case may be as briefly narrated as can be by a recital of the referee's findings, conclusions and order, which are as follows:

"1. That August Massett, the claimant, was employed by the Armerford Coal Mining Company, the defendant, as a miner, at a weekly wage of $62.52, and while so employed on Dec. 4, 1920, he suffered an injury to his left eye by a piece of stone glancing from the point of the pick, striking the pupil of the said eye. That following this injury the claimant was totally incapacitated, and Compensation Agreement No. 1,062,281 was entered into by and between the parties, which agreement provided for the payment of compensation at the rate of $12 per week for an indefinite period. This agreement was approved by the Workmen's Compensation Board Jan. 20, 1921. Under the said agreement the defendant paid to the claimant compensation at the rate provided therein for a period of twenty-three weeks and one day, or a total sum of $278, to July 18, 1921. The defendant also furnished the claimant with reasonable medical services.

"2. The State Workmen's Insurance Fund, the insurance carrier and defendant, on Sept. 29, 1921, filed with the Workmen's Compensation Bureau a petition asking that the compensation agreement be terminated as of July 18, 1921.

4 D. & C.

"3. As a result of the injury sustained by claimant on Dec. 4, 1920, a traumatic cataract formed in the injured left eye; claimant's eye was operated upon July 21, 1921, by Dr. L. M. Gurley, of Johnstown, Pa., and the cataract removed. Subsequently the claimant was examined by Dr. J. A. Walters, an eye specialist of Punxsutawney, Pa., and Dr. C. N. Harris, an eye specialist of Johnstown, Pa. These three eye specialists gave their testimony, from which we find that in the claimant's right eye (the uninjured eye) the vision is 20/16ths, slightly better than normal, while the vision in the injured left eye is so little that the use of the said eye has been destroyed for all practical purposes. With a specially fitted lens, or glasses, the vision in the injured left eye can be brought up to 20/30ths, or practically normal vision; however, with the glasses, the two eyes do not co-ordinate, and it would not be possible for him to wear these specially-fitted glasses and have binocular vision. We find from all the medical testimony introduced that the claimant has lost the use of his left eye for all practical purposes and intents, and that this condition is permanent. On account of the relative difference in the two eyes, it would not be practical to use artificial lenses, as the two eyes would not co-ordinate, and we find that, even with the aid of glasses, the claimant has lost the industrial use of his left eye."

*"Conclusions of law."*

1. "That the petition of the defendant to terminate compensation cannot be granted, and the claimant, as the result of the injury sustained while in the employ of the defendant, having lost the use of his left eye for all practical purposes, he is entitled to have Compensation Agreement No. 1,062,281 modified to provide for payment of compensation as provided in section 306 *(c)* of the Workmen's Compensation Act of 1915, as amended by the Act of 1919, and we accordingly enter the following order: The petition of the defendant to terminate compensation is dismissed, and it is hereby ordered that Compensation Agreement No. 1,062,281 be and the same is modified to provide for the payment of compensation at the rate provided therein, for a period of 125 weeks, for the loss of the use of the left eye; the defendant to be credited on this order with the amount of compensation already paid claimant under the said agreement."

The question before us is whether the Compensation Board was warranted under the findings of facts in refusing to terminate the agreement as of July 18, 1921, the petition of the defendant having been dismissed and an order made to the effect that compensation be continued as per agreement for the balance of the 125 weeks at the rate of $12 per week.

Now, what are the material facts as found? They are contained in the referee's "third" finding. If the conclusions of law based upon the "third" finding are wrong, then the decision of the Workmen's Compensation Board should be reversed, otherwise the board should be affirmed and the appeal dismissed.

The referee and the Compensation Board, in affirmance of his findings and order, take the position that the claimant lost the use of an eye and should be compensated therefor as provided by section 306 *(c)* of the Act of 1915, amended by the Act of June 26, 1919, P. L. 642.

The referee finds that "with a specially-fitted lens, or glasses, the vision in the injured left eye can be brought up to 20/30ths, or practically normal vision." He also finds "that in the claimant's right eye (the uninjured eye) the vision is 20/16ths, slightly better than normal, while the vision in the injured left eye is so little that the use of the said eye has been destroyed for

all practical purposes." *Why* the referee finds in one sentence that the use of the injured eye "has been destroyed for all practical purposes" and in another sentence finds that "with a specially-fitted lens, or glasses, the vision in the injured left eye can be brought up to 20/30ths, or practically normal vision," is evidently based upon his further finding, wherein he states, "With the glasses the two eyes do not co-ordinate, and it would not be possible for him to wear these specially-fitted glasses and have binocular vision." The only specialist that testified in this case who mentioned anything about co-ordination was Dr. C. N. Harris, who said, *inter alia:* "It is conceded, in fact claimed by most authorities, that a correcting lens over such an eye (meaning the injured eye of claimant) in the average case will not co-ordinate," and in answer to the question, "Is that your opinion in this case?" Answer. "Yes, sir. If he needed a correcting lens in the other eye, the two might work together, but in 99 out of 100 they will not co-ordinate on account of the relative difference in the eyes; different pictures come to the brain from each eye, and it's a condition the patient cannot tolerate."

Dr. Harris says that, "figuring ordinarily," the claimant has 20/30ths vision with glasses, but according to a table of percentages used by the best men of the profession, his vision with glasses is 94½ per cent., or nearly normal, and further states that if claimant ever loses the right eye, this injured eye, with the use of glasses, claimant "wouldn't take a million for." He says that he could mine coal with the use of glasses, but that would not be the best occupation under his condition, and that he should not use glasses. "Q. In your opinion, glasses cannot be suitably fitted that will allow him to follow his occupation? A. And give him that amount of vision? Q. 20/30ths, or whatever it is? A. He would use that opposite eye—they will not co-ordinate. Q. Then when you say he has practically normal vision with the aid of glasses on that injured left eye, you mean if he could wear them, and if it were practical, and in this case it's not, unless he should lose the other eye? A. Correct."

The compensation awarded was for total disability for the loss of an eye, as provided in schedule "*C*," section 306, of the act of assembly hereinbefore referred to. This section refers to *all disability resulting from permanent injuries*, and not necessarily to the loss of the members in consequence of being severed from the body. In other words, it is a schedule of compensation for the permanent loss of the total use of the members mentioned, resulting from injuries received. In the case at bar, clearly the injury is *permanent*, and the disability is of such a character and quality as to render the injured eye valueless when used in conjunction with the other eye. True, claimant, with the use of a correcting lens for the injured eye, can *now* use either eye, one at a time, with almost normal vision, and in the event of the loss or impairment of the uninjured right eye, whereby the crystalline lens should be removed, then a correcting lens for that eye could be supplied, and thus co-ordination and binocular vision would be effected. While the language of the statute is "all disability resulting from permanent injuries," etc., we construe it to mean, in a case of this kind, to cover a condition where the eye is rendered comparatively valueless in a vocational pursuit in earning a livelihood. According to the testimony of the eye specialist, Dr. C. N. Harris, which theory is in accord with the best professional tests and treatment of ophthalmia, the two eyes will not function *together* on account of the injury; hence, we are forced to the conclusion that the injury is *permanent* and the disability *total* for industrial pursuits, either with or without glasses. Surely the intent and expressed purpose of the Compensation Act never was intended

4 D. & C.

Massett v. Amerford Coal Mining Company et al.

to mean that as long as there is a *possibility* of the uninjured eye being destroyed, the claimant is barred from compensation "For the loss of an eye, 60 per centum of wages during 125 weeks," as provided by the statute.

The decision of the Court of Common Pleas of Cambria County, at No. 478, March Term, 1923, Oscar Dishong v. Vinton Colliery Co. et al., differs from the case at bar, in that in said case the Workmen's Compensation Board did not find as a fact that claimant had not lost the use of his eye for industrial purposes when aided by glasses. Here the referee finds, and the Compensation Board affirms his finding, that "on account of the relative difference in the two eyes, it would not be practical to use artificial lenses, as the two eyes would not co-ordinate, and we find that, even with the aid of glasses, the claimant has lost the industrial use of his left eye."

After a careful review of the testimony, and upon due consideration of the findings of facts and conclusions of law, the appeal will be dismissed.

### Order.

And now, Oct. 13, 1923, this case came on to be heard by argument of counsel, and upon due consideration thereof it is ordered and adjudged that the appeal of defendants be dismissed, and it is further ordered and adjudged that the findings of fact, conclusions of law and order of the referee as affirmed by the Workmen's Compensation Board be affirmed. Exception allowed defendants.

From James L. Jack, Indiana, Pa.